**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CAREY JOHN ADKERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-00878** |
| | ) | **Judge Aleta A. Trauger** |
| **METROPOLITAN GOVERNMENT** | ) | |
| **OF NASHVILLE AND DAVIDSON** | ) | |
| **COUNTY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 42) filed by the Metropolitan Government of Nashville and Davidson County ("Metro"). The motion has been fully briefed by both parties and is ripe for review. For the reasons set forth herein, the motion will be granted and this case dismissed.

## I.      Factual and Procedural History

Plaintiff Carey John Adkerson's first Amended Complaint (Doc. No. 12) asserted a procedural due process claim under 42 U.S.C. § 1983 and a whistleblowing claim under the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304(b), both in connection with his alleged termination from his job as a police officer with the Metro Nashville Police Department ("MNPD"). In January 2017, the court denied Metro's Motion to Dismiss the first Amended Complaint.

On May 3, 2017, new counsel for the plaintiff entered an appearance and filed the Second Amended Complaint ("SAC") (Doc. No. 41) on his behalf. The SAC articulates a

single cause of action under 42 U.S.C. § 1983, but the factual allegations supporting the claim have shifted fairly dramatically from those set forth in the first Amended Complaint. For purposes of reviewing the defendant's motion, the court accepts as true the factual allegations in the SAC, summarized here in relevant part.

Plaintiff Carey John Adkerson was formerly employed as a fully commissioned police officer with the MNPD. On January 6, 2014, Adkerson was decommissioned as an active police officer because of various disciplinary charges that were then pending against him. At a hearing conducted on March 5, 2014, he was found guilty of the charges and given two terminations and thirty-eight days of suspension. His employment was terminated. (SAC ¶¶ 21–22 & Ex. A.) He pursued an administrative appeal, and, on February 19, 2015, the Metro Civil Service Commission issued a written Order ("reinstatement Order") directing that Adkerson "be reinstated to his former position with MNPD with back pay and benefits, minus a nineteen (19) day suspension." (SAC ¶ 23 & Ex. B.)

Adkerson was rehired by the MNPD in May 2015 with full back pay and benefits and, apparently, at the same salary level as before his termination, but the Chief of Police "refused to give him a badge and a weapon." (SAC ¶ 24.) In other words, the plaintiff remained decommissioned. More than a year later, in July 2016, Adkerson submitted a grievance challenging the Police Chief's action and requesting that Adkerson's commission be "fully restored immediately." (SAC Ex. C, Doc. No. 41-3, at 3.) The grievance was denied by the Human Resources Department and at the initial level of appeal. (SAC ¶ 26 & Ex. D.) Adkerson appealed to the Metro Human Resources Department, which denied his appeal on the basis that his complaint regarding his assignment within the police department was "non-grievable." (SAC ¶ 27 & Ex. E.) He appealed to the Civil Service Commission, which

entered a Final Order on November 16, 2016, also denying relief on the grounds that the matter was non-grievable and notifying Adkerson of his right to file a petition for review of the Final Order in the Chancery Court for Davidson County, Tennessee. (Final Order, SAC Ex. F.)[1]

The SAC references and included as an exhibit to the SAC numerous MNPD Rules and Regulations, including Rule 3.50, which outlines the process for a police officer to appeal an adverse employment action taken against him, and 4.60, which pertains to decommissioning. As the plaintiff points out, Rule 3.50 did not apply to his situation, because Rule 4.60 "has no provision for appealing decommissioning." (SAC ¶ 30; *see also* SAC Ex. G.) Further, Civil Service Commission Rule 6.9A, also attached to the SAC, states that actions that fall within "management rights to schedule and organize work, to make work assignments, and to prescribe methods and procedures by which work is performed" are not grievable. (SAC ¶ 32 & Ex. H.)

Adkerson asserts that, without a badge or weapon, he cannot perform the essential duties of the job of a police officer and, therefore, that the Police Chief's refusal to issue him a weapon or badge constitutes a demotion. He also asserts that he had a property interest in his employment as a police officer with the MNPD and that the MNPD Rules and Regulations delineate a specific process available to officers who seek to challenge any adverse employment action taken against them, but the Rules and Regulations do not set out a process for appealing a decommissioning. Adkerson claims that the failure of the Rules and Regulations to provide a process for an officer to appeal a decommissioning, as a *de facto*

---

[1] Even before that Final Order was issued, however, the plaintiff had initiated the present action by filing his original Complaint in the Circuit Court for Davidson County, Tennessee on March 31, 2016, which was later removed to this court.

demotion, constitutes a violation of his due process rights. (SAC ¶ 30.) Finally, he claims that the MNPD's refusal to reinstate him to his former position within the police department, without affording him either a pre-deprivation hearing or a post-deprivation hearing, violated the Civil Service Commission's Order that he be reinstated to his "former position with the MNPD" and also violated his right to procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution. (SAC ¶ 36.)

Following the filing of the SAC, Metro promptly filed its Motion to Dismiss, which has now been fully briefed.

## II. Legal Standard

The defendant's motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on

"legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## III. Discussion

### A. The Parties' Positions

Citing *Lisle v. Metropolitan Government*, 73 F. App'x 782 (6th Cir. 2003), Metro argues that the Sixth Circuit has already determined that (1) being decommissioned as a Metro Police Officer and reassigned to a different job within the department, without a decrease in pay, does not constitute a demotion or adverse employment action, that a Metro Police Officer has no property interest in his commission or in carrying a gun and a badge, and, therefore, that no procedural due process right attached to the deprivation of those accoutrements; (2) being stripped of a gun and badge and moved to a clerical position constitutes an interdepartmental transfer, which is permitted at the discretion of the Chief of Police without a due-process hearing; and (3) the Police Chief did not refuse to obey the Civil Service Commission's Order, because that Order did not require that Adkerson be recommissioned.

In response, Adkerson concedes that he received all of the back pay to which he was entitled and that he "suffered no loss of pay or benefits as a result of being decommissioned." (Pl.'s Resp. Opp. M. Dismiss, Doc. No. 45, at 3.) He nonetheless insists that the Police Chief's refusal to reinstate him to his former position constituted a demotion with respect to which he was denied his right to procedural due process. He also asserts that he has a

property interest in not being denied the opportunity to be promoted. (Doc. No. 45, at 3.)

**B.** *Procedural Due Process Claim under § 1983*

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The due process clause has both procedural and substantive components." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). Here, the plaintiff raises a procedural due process claim under 42 U.S.C. § 1983.

To survive a motion to dismiss this claim, the plaintiff "must allege facts showing (1) that he was deprived of a constitutionally protected liberty or property interest; and (2) that he did not receive the required process." *Bright v. Gallia Cnty.*, 753 F.3d 639, 656 (6th Cir. 2014) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 54 (1985); *Leary v. Daeschner*, 228 F.3d 729, 741–42 (6th Cir. 2000)). The question here is whether the plaintiff has alleged facts showing that he was deprived of a property interest.

"Property interests are not created by the Constitution." *Loudermill*, 470 U.S. at 538. Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source . . . ." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). An individual claiming to have a protected property interest in his position "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. A legitimate claim of entitlement "must be grounded in some statute, rule, or policy." *Hughlett v. Romer–Sensky*, 497 F.3d 557, 567 (6th Cir. 2006). "Whether a person has a 'property' interest is traditionally a question of state law." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)); *see also Roth*, 408 U.S. at 577. Under

state law, "[a] property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Ludwig v. Bd. of Trs.*, 123 F.3d 404, 409 (6th Cir. 1997) (citations omitted). "A statute or contract providing that employees may be disciplined or terminated only for 'just cause' creates a property interest." *Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 647–48 (6th Cir. 2013) (citing *Loudermill*, 470 U.S. at 538–39).

### C.     Whether the Plaintiff Had a Constitutionally Protected Property Interest

The plaintiff here insists that (1) the decommissioning, although it did not result in a reduction in pay, constitutes a demotion because it eliminated his ability to perform the essential functions of the job of a police officer and limits his opportunities for promotion and advancement within the MNPD; (2) he had a property interest in not being demoted by being decommissioned; (3) the unavailability of any procedure for challenging this demotion violated his right to procedural due process; and (4) the Civil Service Commission's refusal to hear his claim that the Police Chief violated the Commission's reinstatement order violated his right to procedural due process.

The facts of *Lisle v. Metropolitan Government*, upon which Metro relies, are markedly similar to those here. There, three patrol officers with the MNPD were alleged to have engaged in misconduct and were interviewed by the department's internal affairs unit regarding these allegations. The next day, a local paper published an article detailing the accusations. Shortly thereafter, all three officers were

> informed that they had been "disempowered" and transferred from patrol duty to clerical tasks in the police communications department, which ordinarily was staffed almost exclusively by civilian employees. This transfer entailed the officers' surrendering such incidents of their patrol duty as badges, uniforms, weapons, cars, and other equipment, but no reduction in salary.

73 F. App'x at 784. The officers complained to the Police Chief that the "disempowerment"

violated departmental regulations and their due process rights, to no avail. Nearly a year later, the officers were informed that the investigation into their alleged misconduct had concluded and that no further discipline would be forthcoming. However, they were also not returned to their former positions and remained "disempowered." *Id.*

The officers filed suit, asserting, *inter alia*, that they had a property interest in their positions as patrol officers and that they had been deprived of that property interest without due process. In considering this claim, the Sixth Circuit accepted that the officers had "received no or practically no process at all," so "their property claim hinge[d] on whether anything in Tennessee statute, common law, or regulation creates an interest in their assignment as patrol officers." *Id.* at 785. The court answered that question in the negative.

In reaching that conclusion, the court observed, first, that Tennessee statute accord civil servants a protected property interest in their positions and that, pursuant to that statute, "no suspension, demotion, dismissal, or any other action which deprives a regular employee of such employee's 'property right' will become effective until minimum due process is provided as outlined [by statute]." *Id.* at 786 (quoting Tenn. Code Ann. § 8-30-331). The court also found, however, that,

> [i]n the present case, the officers were reassigned, not suspended, demoted, or dismissed. Nor were they made subject to "any other action which deprives a regular employee of such employee's 'property right.'" Even after the transfer, they would continue to enjoy the protection against suspension, demotion, or dismissal. As the general Tennessee civil service statute does not create a property interest against reassignment, they were not deprived of a property right protected by that statute.

*Id.* (quoting Tenn. Code Ann. § 8-30-331).

The police officers also alleged that their transfer was punitive and therefore covered by a civil service statute that applied specifically to police officers. This statute prohibits

"transfer for punitive reason" without some minimum due process. *Id.* (citing Tenn. Code Ann. § 38-8-304). The court rejected this argument on the basis that the referenced statute also provides a "default rule that can be overridden by local regulation." *Id.* Because Metro Nashville had adopted such local regulations, the statute did not apply, and no other state statute created a property interest in the officers against reassignment. Turning to the question of whether the common law created such a property interest, the court found that it did not, in light of Tennessee's long-standing recognition of the employment-at-will doctrine.

Finally, turning to whether the municipality's civil service regulations created the requisite property interest, the court noted that the "Appointing Authority," the Chief of Police in that case, has essentially unfettered discretion under municipal and department regulations to order inter-departmental transfers and job reassignments, as long as they do not involve termination, suspension, or a demotion "in pay grade." *Id.* at 786–87. The court therefore found that the plaintiffs' permanent reassignment to clerical positions, which was not accompanied by a demotion in pay grade, did not violate the officers' property interest in their jobs. In short, because the plaintiffs were not demoted, no property interest was implicated, and no right to procedural due process was triggered.

*Lisle* dictates the outcome here. Although the police officer plaintiffs in *Lisle* did not refer to the action against them as decommissioning, their "disempowerment" clearly had the same effect as the plaintiff's decommissioning here, which likewise resulted in the plaintiff's being relieved of his weapon and badge. And the plaintiff here, like the *Lisle* plaintiffs, concedes that he did not suffer a reduction in salary or benefits. Like the *Lisle* plaintiffs, who were also Metro police officers, Adkerson cannot establish that state statute, common law, or local regulation created a protected property interest in his assignment as a commissioned

patrol officer.

Specifically, the current governing regulations make it clear that Adkerson's intra-departmental transfer did not constitute a demotion. MNPD Rule 4.10.210(A) defines "demotion" as "a regular or temporary change of classification and/or compensation of an employee as a result of disciplinary action from a position in one class to a position in another class having less responsibility *and a lower level of compensation* or *a reduction in salary* to a lower step in the same classification" (emphasis added). The plaintiff concedes that his compensation was not reduced. Moreover, MNPD Rule 4.60.020 states that "[d]ecommissioning, or removal of police authority, is <u>not a disciplinary action</u>" (emphasis in original).[2]

The plaintiff contends in the alternative that his reassignment constitutes a demotion because it removed his opportunity for promotion and advancement. The plaintiff, however, does not allege facts in his Second Amended Complaint to support a claim that his decommissioning deprives him of the right to seek a promotion or that he ever sought and was denied a promotion as a result of the decommissioning. In his Response, he asserts vaguely that "[t]wo promotional opportunities have already alluded him while in this classification." (Doc. No. 45, at 4.) Although he attached as exhibits to his Response two vacancy announcements, he does not claim that he applied for either position, nor does he explain why the decommissioning deprives him of the ability to seek a promotion.

Moreover, he does not provide any legal support—and the court's search has revealed none—for the proposition that a Metro civil servant ever has a protected property interest in a

---

[2] The plaintiff attached a copy of these rules to the SAC (Doc. No. 41-7) and referenced them in the body of the pleading. (SAC ¶ 30.) As a result, the court may consider these documents without converting the defendant's motion into one for summary judgment.

promotion or the ability to pursue a promotion. And virtually every court to consider the question has concluded, under the applicable state's laws, that civil servants do not have a property interest in the possibility of a promotion or the fairness of the procedures used for determining promotions. *See, e.g.*, *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007) (finding that state employees had a protected interest in continued employment but no "protected property interest in a promotion" under Colorado law); *McMenemy v. City of Rochester*, 241 F.3d 279, 286–88 (2d Cir. 2001) (holding that New York law pertaining to civil servants did not create a property interest in a promotion or in being considered for a promotion); *Bigby v. City of Chicago*, 766 F.2d 1053, 1056–57 (7th Cir. 1985) (dismissing due process challenge to fairness of test procedures for civil service promotions because there were no property interests in the promotions themselves under Illinois law); *Burns v. Sullivan*, 619 F.2d 99, 104–05 (1st Cir. 1980) (dismissing procedural due process claim relating to state promotion procedures because the plaintiff had no property interest in a promotion under Massachusetts law). In the absence of a specific statute or regulation providing otherwise, this court likewise concludes that the plaintiff has no property interest under Tennessee law in the possibility or availability of a promotion.

In sum, the decommissioning—or failure to recommission—did not constitute a demotion. As a result, the plaintiff's property rights in his position were not implicated, and he was not due any particular "process," for purposes of a procedural due process claim, relating to his reassignment.

The plaintiff further claims that Metro denied him the due process rights guaranteed by the Civil Service Commission's own rules by refusing to hear his appeal of the Police Chief's refusal to obey the reinstatement Order. That Order states, in pertinent part: "Mr.

Adkerson shall be reinstated to his former position with MNPD with back pay and benefits, minus a nineteen (19) day suspension." (Doc. No. 41-2, at 2.) The plaintiff concedes that he was reinstated to the position of Police Officer 2 at the same rate of pay as before, with back pay and benefits. He nonetheless contends that the reinstatement Order required that be recommissioned as a patrol officer and that the Police Chief violated the reinstatement Order when he refused to recommission the plaintiff and instead assigned him to an essentially clerical position within the department.

The plaintiff's allegations establish that he did not actually pursue an action to enforce the reinstatement Order. Instead, he waited more than a year before filing an entirely new grievance related to his not having been recommissioned as he believed was required by the Final Order. That grievance was denied at every level, up to and including his appeal to the Civil Service Commission, on the basis that the Police Chief has broad discretion to make job assignments within the police department and therefore that Adkerson's complaint regarding his assignment was non-grievable.

To the extent that Adkerson contends that he was deprived of due process because the MNPD and Metro Rules do not provide a procedure for grieving a decommissioning, that claim fails, because, as set forth above, the plaintiff had no property right in a particular assignment within the police department and therefore no right to any particular process regarding such assignments.

Insofar as the plaintiff is complaining that he did not receive due process because the Police Chief refused to comply strictly with the reinstatement Order, that claim fails too. The plaintiff received all the process to which he was entitled: he pursued administrative appeals up to and including the Civil Service Commission's reinstatement Order. The Police Chief's

purported failure or refusal to comply with that Order had nothing to do with the process afforded the plaintiff as a result of the disciplinary charges against him. The appropriate course of action, if he believed the Police Chief disobeyed the reinstatement Order, would have been to pursue a state court action to compel compliance with the reinstatement Order. *Accord Chaney v. Suburban Bus Div.*, 52 F.3d 623, 631 (7th Cir. 1995) (finding that the defendant's failure to comply with an arbitration award did not violate the plaintiffs' due process rights, where the plaintiff had received all the process afforded by the union contract, had won his arbitration, and had the ability to enforce the arbitration award through the initiation of state court proceedings). Adkerson has not alleged that the state procedure for enforcing an order issued by the Civil Service Commission is inadequate. *See Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004) ("Plaintiff may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations.").

**IV.    Conclusion**

For the reasons stated herein, the court finds that the factual allegations in the SAC, construed as true for purposes of the defendant's Motion to Dismiss, fail to establish a violation of Adkerson's right to procedural due process and, consequently, fail to state a claim under 42 U.S.C. § 1983. The court will therefore grant the defendant's Motion to Dismiss the Second Amended Complaint. An appropriate order is filed herewith.

ENTER this 24th day of October 2017.

ALETA A. TRAUGER
United States District Judge